# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

In re:

ERIC DEON WILLIAMS and
CHERYL LYN WILLIAMS,

        Debtors.

Case No. 11-15920-RGM
(Chapter 13)

## <u>MEMORANDUM OPINION</u>

THIS CASE is about the debtors' decision to purchase an expensive new car six days before filing their chapter 13 petition in bankruptcy. It is before the court on the chapter 13 trustee's objection to the debtors' third proposed chapter 13 plan. The trustee raises two objections: first, that the plan was not proposed in good faith; and second, that the debtors are not paying their disposable monthly income to the plan. 11 U.S.C. §§1325(a)(3) and (b)(1)(B). The objections are well taken. The plan will be denied confirmation with leave to propose a new plan.

## <u>The Debtors' Financial Circumstances</u>

The debtors state in their schedules that they own their home which they value at $225,700 and that it is subject to two liens, a first deed of trust in the amount of $302,331 and a second deed of trust in the amount of $40,685. Both mortgages were current when the petition was filed.[1] The debtors have stripped off the second deed of trust in an adversary proceeding.

---

[1] *See* Statement of Financial Affairs, Question 3 (regular payments made in April, May, June and July on both mortgages). No proof of claim for arrearages on either mortgage has been filed. The petition was filed on August 11, 2011.

The debtors also state in their schedules that they own two cars, a 1996 Buick Skylark which they valued at $750 and a 2011 Lexus RX-350 sports utility which they valued at $42,000. They did not state the mileage on the Buick Skylark but did state that the Lexus had 185 miles on it. The Buick is not encumbered. The Lexus is subject to a lien of $42,000.[2]

The debtors scheduled unsecured creditors with claims of $83,541. Most are credit cards, the largest being $29,259 and five being in the range of $5,000 to $8,000. There are no priority claims or claims for arrearages on the two deeds of trust encumbering the debtors' home.

### The Purchase of the New Car

The evidence heard by the court together with the debtors' schedules and Statement of Financial Affairs and Toyota Motor Credit Corporation's proof of claim show that on August 5, 2011, the debtors owned three cars: the 1996 Buick Skylark, a 2007 Lexus RX 400H with 90,000 miles and a 2007 Lexus ES 350 with 50,000 miles. They purchased the new 2011 Lexus RX 350 sports utility on August 5, 2011, for $46,900.[3] The 2007 Lexus RX 400H and the 2007 Lexus ES 350 were traded as a part of the transaction for which they received a net credit of $14,111.[4] The debtors borrowed $35,047.69 to pay for the new car. The new loan was amortized over 75 months with monthly payments of $565.28 commencing September 19, 2011. The total cost of the new car

---

[2]Toyota Motor Credit Corporation's proof of claim asserts a claim of $34,369.34 secured by the new car.

[3]Notwithstanding the August 5, 2011 sales price of $46,900, on August 11, 2011, the debtors scheduled the value of the new car as $42,000.

[4]The gross trade-in allowance for the two cars was $35,300. The payoff of the loans secured by them was $21,189.

including interest on the loan, sales tax, and other costs and fees was $56,507.[5]  Each car traded in

had a loan against it.  The monthly payment on the loan secured by the 2007 Lexus RX 400H was

$484 and by the 2007 Lexus ES 350 was $866.  There were twelve payments left on former, 24 on

the latter.

The debtors first consulted their bankruptcy attorney in June 2011.  They paid his fee in July

2011.[6]  They completed their credit counseling on July 7, 2011.  They purchased their new car on

August 5, 2011.  They filed their petition on August 11, 2011.  The certificate of title with the lien

in favor of Toyota Motor Credit Corporation was issued on August 23, 2011.  The first payment on

the new loan was due on September 19, 2011.

### The Trustee's Objections to Confirmation

The debtors' first chapter 13 plan proposed to pay $150 a month to the trustee for 60 months,

for a total of $9,000.  The trustee objected to the proposed plan on bad faith and the failure of the

debtors to pay their disposable monthly income to the plan.  His principal concerns were the

purchase of the new car and the treatment of the second trust on the debtors' home.  While they

intended to strip the second trust off their home, they included the monthly mortgage payment as

a monthly expense thereby improperly reducing their monthly disposable income by $482.89, or

$28,973.40 over the life of the plan.  The objections were sustained and the plan was denied

confirmation with leave to file a second chapter 13 plan.  The trustee expected that the new plan

---

[5]The finance charge as reflected on the Installment Sales Contract was $7,348.31.  There were additional costs
and fees of $2,258.69 which included sales tax of $1,418.97 and documentation fees, and other taxes and charges of
$839.72.  Proof of Claim of Toyota Motor Credit Corporation, Claim 12.

[6]The total agreed fee was $3,000 of which $1,500 was paid in July, 2011, and $1,500 is to be paid by the trustee
through the chapter 13 plan

3

would meet his objections by increasing the plan payments by the amount of the second trust payment and an amount computed so that creditors would not be disadvantaged by the purchase of the new car.  The trustee reasonably expected that the new plan would be funded with at least $37,973.40, the amount to be paid into the first plan plus the amount of the mortgage payment to be stripped off.  The trustee also reasonably expected additional funding to eliminate the prejudice to creditors from the purchase of the new car.

The debtors' third plan proposed to pay $23,847 to the trustee.[7]  The debtors supported their third plan with a revised means test analysis which, among other changes, deleted the $482.89 second trust payment as an expense and addressed the prejudice to creditors from the new car purchase by replacing the new car loan payment of $565.28 with $421.84,[8] the hypothetical re-amortization of the two old car loans at the *Till* rate.  *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951 (2004).  The trustee, after a thorough analysis, recalculated the debtors' monthly disposable income and concluded that it was $594.92.  The debtors accepted the trustee's new calculation except for a new $264 adjustment to the local standards for additional utilities.  They asserted that their monthly disposable income was $330.92.

The trustee again objected on grounds of bad faith and the failure of the debtors to devote their entire monthly disposable income to the chapter 13 plan.

---

[7]The debtors filed their second chapter 13 plan which provided for stepped up payments from $150 a month to $300 a month with total payments to the trustee of $17,001.  Before the hearing on the trustee's objections, the debtors filed their third plan which is the one before the court.

[8]The debtors computed the payment at $422.74 in their means test but their amortization schedules attached to the means test show $421.84.

4

## Discussion

The trustee's objections are well taken.  The debtors were given an opportunity to cure the negative effect of their improper car purchase by proposing a plan that would put the creditors in the same position as if they had not bought their new car, but did not do so.

The debtors had three options in dealing with their cars.  Prior to the transaction, although there were only two drivers in the household, they owned three cars, two of which were encumbered. There were two monthly loan payments, one of $866 with 24 payments remaining on the loan and the other of $484 with twelve months remaining.  The first option was to surrender or sell the Lexus ES 350 which was burdened with an $866 monthly payment.  The debtors would have ended up with two cars, the Buick Skylark which was owned free and clear and the Lexus RX 400H with twelve payments of $484 remaining on the loan, an amount and a duration less than their new loan.  They would have eliminated $866 from their monthly expenses and realized the equity in the Lexus ES 350.[9]

The second option was to sell the Buick Skylark, keep the two newer cars and re-amortize the loans encumbering them at the *Till* rate.  The debtors computed the re-amortized *Till* payments for their revised means test at $324.09 and $97.75, for a total of $421.84, an amount less than their new car loan.

The third option, and the one they chose, was to keep the Buick Skylark and replace the two newer cars with a brand new car and a new car loan.  The new car loan was $565.28 a month for 75 months.  The loan was 62 months longer than under the first option and 15 months longer than their chapter 13 plan.

---

[9]There may be some concern about retaining a 16-year-old car, but that is what the debtors chose to do when they traded their two five-year-old cars for a new car and while retaining the 16-year-old car.

Had the debtors chosen the first option, the plan would have been funded with an additional $24,207.[10] Had they chosen the second option, the plan would have been funded with an additional $8,606.[11] All three options were feasible because the monthly payments under the first two options would have been lower than the new car loan which was already in their budget.

The debtors argue that re-amortizing the two car loans that existed before they purchased their new car places the creditors in the same position that they would have been in had they not improvidently purchased the new car. The re-amortized payment is $421.84 rather than the new car payment of $565.28. While this approach has some appeal, the court cannot accept it. The debtors had the opportunity to do exactly what they are now hypothesizing. They could have actually retained their two cars and attempted to modify the interest rates and the terms of the loans in their chapter 13 plan, but they did not do this. They chose to trade their two cars for a new one. In the process, they sought to obtain a benefit – a new car – at the expense of their creditors. Ostensibly, their proposed cure puts the creditors back in the position they ought to have been in originally. However, payment has been delayed by the litigation resulting from the debtors' improper conduct. The creditors unknowingly ran the risk of a reduced payment under the plan because of the debtors' conduct. But for the trustee's keen attention to detail, they would have been injured by the debtors' conduct. Setting matters right will be accomplished through the efforts of the trustee which should have been unnecessary and which increase his costs, costs that are ultimately paid from money that would otherwise be distributed to creditors.

---

[10]Of the $24,207, $23,232 would have been available after the loan was paid off in the twelfth month. The additional $975 is the difference between the new car loan of $565.28 and the old car loan of $484.

[11]This is the difference between the new car payment of $565.28 and the *Till* re-amortized car payments of $421.84 over 60 months.

The debtors proposed cure is a "no harm, no foul" rule; that is, if the debtors' hands are caught in the cookie jar, it is sufficient to let go of the cookies and to leave them in the cookie jar. The Court of Appeal addressed the "no harm, no foul" rule, albeit in a different context, in *Tavenner v. Smoot (In re Smoot),* 257 F.3d 401, 406-407 (4th Cir. 2001) and found it wanting.  In this context, it would encourage – rather than discourage – conduct similar to that in this case.  It encourages debtors to take the risk of improper conduct.  If caught, they are simply put back in the position from which they started.  If they are not caught, they reap the rewards.

The court cannot accept the debtors' proposal to hypothetically re-amortize the original car loans at the *Till* rate over the term of the chapter 13 plan in an attempt to purge the taint of their improper eve-of-bankruptcy car purchase which was made with the intent of reducing their payments to their creditors.  They had the opportunity to choose this option, but rejected it.  They cannot now argue that they should be treated as if they had chosen it.[12]  The proposed cure offers no deterrent to others who may wish to emulate their conduct.

The debtors chose to retain the Buick Skylark.  This decision should be a part of the remedy. It means that one of the other cars would have been sold or surrendered since there were three cars and only two drivers in the household.  The one that should have been surrendered was the one burdened with the higher loan payment.  The higher payment was significantly higher and extended longer than the other car loan.  In order to determine the additional amount necessary to purge the taint in this case, the first option is the most appropriate.  The debtors' plan will treat their expenses for car loans at $484 for twelve months only.

---

[12]It is akin to the equitable maxim that "One who remains silent when he should have spoken will not be permitted to speak when he should remain silent."  *Snead v. Atkinson,* 121 Va. 182, 92 S.E. 835, 837 (1917).  *See also State-Planters' Bank & Trust Co. v. First Nat. Bank,* 76 F.2d 527, 530 (4th Cir. 1935) cert. denied, 295 U.S. 764, 55 S.Ct. 923 (1935)

7

The debtors also attempt to add an additional expense for utilities. The additional expense will not be allowed. They assert that the additional expense is allowed under 11 U.S.C. §707(b)(2)(A)(ii)(V).[13] This section only allows additional expenses for home energy costs. Most of the additional expenses claimed here are for telephone service, not for energy costs. In addition, the additional expenses must be both reasonable and necessary. Even if telephone service was a home energy expense – which it is not – the claimed expenses are not reasonable or necessary. The telephone service includes two smart phones with data packages and a land line. In the circumstances in this case, the debtors have not shown any reason why they need any cell service in addition to their land line. Even if one or two cell phones were allowed, there is no showing that the data packages – which add quite a bit to the monthly bills – are necessary.

## Conclusion

The trustee's thorough analysis of the debtors' monthly disposable income is the appropriate measure of the debtors' monthly disposable income except that the debtors' use of the re-amortized pre-petition loans that have been paid will be changed from $422.74 for 60 months to $484.00 for twelve months. This results in monthly disposable income of approximately $653.96 for twelve months and $1,137.96 for 48 months. As a result, the chapter 13 plan must provide payments to the chapter 13 trustee of $62,469.60 over 60 months.

---

[13]Section 707(b)(2)(A)(ii)(V) of the Bankruptcy Code provides:

In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expense are reasonable and necessary.

The debtors' third chapter 13 plan will be denied confirmation because it was filed in bad faith and does not devote the debtors' entire disposable monthly income to the performance of the plan.  It does not purge the taint of the improper car purchase on the eve of bankruptcy.[14]   The debtors may file a new plan that satisfies the trustee's objections.

Alexandria, Virginia
May 1, 2012

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

---

[14]This Memorandum Opinion addresses the requirement that a *plan* be proposed in good faith, not the requirement that the *case* be filed in good faith.  11 U.S.C. §§1307(c) and 1325(a)(3); *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 127 S.Ct. 1105 (2007).  The assumption – that if the proposed plan appropriately purges the taint of the deleterious eve-of-bankruptcy car purchase, the case can go forward – is not addressed.  In some cases, pre-petition conduct cannot be purged and the petition must be dismissed for having been filed in bad faith.  It may be that the pre-petition conduct in this case could not be purged if this were a chapter 7 case.  The purchase of the new car may have effectively placed the equity in the two cars traded in beyond the effective reach of a chapter 7 trustee.  Toyota Motor Credit Corporation's proof of claim shows that the cars had a trade-in value of $14,111.00.  The debtors scheduled the new car as having no equity by valuing it in the amount of the loan encumbering it.  The equity in the two cars traded might have been claimed exempt by the statutory exemptions and the homestead exemption. But this is not entirely clear.  For example, in this case they schedule $3,156 in personal property exempt under the homestead exemption.  Mr. Williams may have filed a prior bankruptcy case in this court and a homestead deed in that case.  *See In re Eric D. Williams,* Case No. 98-14643-SSM.  Even if the equity in the two cars traded in could have been claimed exempt had the debtors not purchased the new car, they may have placed a prospective chapter 7 discharge at risk.  It is the intent to hinder or delay creditors that is the gravamen of the offense.  *Tavenner v. Smoot (In re Smoot),* 257 F.3d 401, 406-407 (4th Cir. 2001) (exempt property transferred to family members).  While no evidence has been taken and the court forms no opinion, the purchase of the new car has elements of a transaction designed to hinder or delay creditors.  11 U.S.C. §727(a)(2).

The debtors have another good reason to make this chapter 13 work.  Although they have already obtained a strip-off order, the order provides that it will only be effective upon the granting of a chapter 13 discharge.  If this case is dismissed, the lien will continue on the property.  11 U.S.C. §349.

9

Copy electronically to:                    Copy mailed to:

Martin C. Conway                           Eric Deon Williams
Thomas P. Gorman                           Cheryl Lyn Williams
                                           17463 Denali Place
17674                                      Dumfries, Virginia 22025